UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CIVIL ACTION NO:
 1:24-CV-1143 (AMN/DJS)

_____

)
)
ANN SEWALL,                                     )
)
              Plaintiff,                        )          **JURY TRIAL DEMANDED**
)
)
      v.                                         )
)
WALGREEN CO. AND WALGREENS     )
BOOTS ALLIANCE, INC.                   )
)
          Defendant.                     )
_____)

## PARTIES

1.      The Plaintiff, Ann Sewall ("Ms. Sewall" or the "Plaintiff") is a 62-year-old

woman and was born in 1962.  Ms. Sewall is a resident of New York residing in Montgomery,

NY.

2.      Defendant Walgreen Co. is a for-profit corporation doing business in the state of

New York.  Walgreen Co. is incorporated in Delaware with its principal office at 109 Wilmot

Road, Deerfield, IL.

3.      Defendant Walgreens Boots Alliance, Inc. (Walgreen Co. and Walgreens Boots

Alliance, Inc. collectively "Walgreens," "Defendants," or the "Company") is a for-profit

corporation doing business in the state of New York.  Walgreens Boots Alliance, Inc. is

incorporated in Delaware with its principal office at 109 Wilmot Road, Deerfield, IL.

## JURISDICTION AND VENUE

4.    The court has subject matter jurisdiction under 28 U.S.C. §1331 because Ms. Sewall has brought a claim pursuant to the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 1201 et seq., the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §621 et seq., and Family and Medical Leave Act ("FMLA") 29 U.S.C. §2615.  The Court may exercise supplemental jurisdiction over Ms. Sewall's state law claims. 28 U.S.C. §1367.

5.    Venue is appropriate in the Northern District of New York as the acts or omissions giving rise to the claims in this Complaint occurred in the Northern District of New York.

6.    This court has jurisdiction over Defendants, including, but not limited to, because Defendants have engaged in and transacted business in the State of New York, including by managing and/or operating a business in New York and/or employing Ms. Sewall in New York, and Ms. Sewall's causes of action stem largely from Defendants' business transactions within the State of New York. Indeed, Ms. Sewall was employed by Defendants in the State of New York, was managed and supervised by Defendants in the State of New York, was discriminated against and harassed by Defendants in the State of New York and was terminated by Defendants in the State of New York.

## STATEMENT OF FACTS

7.    In or around November 2007, Ms. Sewall began employment with Walgreen Co. as an assistant manager in a Walgreens store in Poughkeepsie, NY.

8.    At all relevant times, Walgreen Co. was a wholly owned subsidiary of Walgreens Boots Alliance, Inc., and was largely run by the parent entity (Walgreens Boots Alliance, Inc.), which controlled Ms. Sewall's terms and conditions of employment.

9.      Walgreen Co. and Walgreens Boots Alliance, Inc.  jointly had control over Ms. Sewall's compensation, scheduling, and job duties. Accordingly, Ms. Sewall was jointly employed by Walgreen Co. and Walgreens Boots Alliance, Inc.

10.     This joint control included, upon information and belief, the ability to hire and fire employees (including Ms. Sewall), administration of employee discipline, control over pay, control over insurance, the maintenance of personnel records, and joint supervision.

11.     Indeed, upon information and belief, the Company (including Walgreen Co. and Walgreens Boots Alliance, Inc.) shared a joint human resources department that maintained personnel records, administered the same policies, made pay decisions, engaged in common management, and was involved in hiring and firing decisions for all the employees (including Ms. Sewall) officially employed by Walgreen Co. and/or Walgreens Boots Alliance, Inc.

12.     This included both entities having immediate control over Ms. Sewall's employment including through the setting of performance goals, providing performance feedback, providing performance reviews, and providing instructions/Company policies.

13.     Notably the Company was operated in an integrated way and constituted an integrated employer with regard to Ms. Sewall.  For example, upon information and belief, they shared common management, common record keeping mechanisms, shared bank accounts, and shared equipment.

14.     Additionally, the Company, upon information and belief, shares common management and ownership and shares centralized control over employees and labor relations such as setting schedules, hiring, firing, etc.

15.     Ms. Sewall was paid by Walgreen Co., eventually terminated by Walgreen Co., and reported to managers from Walgreen Co.

16.　　Upon information and belief, Ms. Sewall worked at Walgreens Boots Alliance, Inc. facilities in NY and Walgreens Boots Alliance, Inc. hired Ms. Sewall and assigned her work

17.　　Accordingly, throughout Ms. Sewall's employment, she was jointly employed by Walgreen Co. and Walgreens Boots Alliance, Inc.

18.　　At all relevant times, the Company (including each of the Defendants individually) employed 20 or more employees during 20 or more calendar weeks during the relevant calendar years.

19.　　Accordingly, at all relevant times, the Company (including each of the Defendants individually) was an employer under the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law, and Title VII of the Civil Rights Act ("Title VII").

20.　　At all relevant times, Ms. Sewall was a qualified employee, and her job performance was satisfactory.

21.　　For the first 4 years of Ms. Sewall's employment, Ms. Sewall worked in stores in the Hudson Valley of New York, including in Newburg, New York and Montgomery, New York.

22.　　In or around 2011, Ms. Sewall's supervisor, Richard Zaccone ("Zaccone"), promoted Ms. Sewall to store manager.

23.　　Zaccone is a non-disabled, male and is approximately 60 years old.

24.　　In or around 2016, Ms. Sewall was transferred to a Bronx, New York location (within New York City). As such, her supervisor became John Livingston ("Livingston").

25.　　Livingston is a non-disabled male and is approximately 20 years younger than Ms. Sewall.

26.    In or around 2018, Ms. Sewall's then supervisor, Livingston, transferred her to the Montgomery store location permanently. As such, Ms. Sewall's supervisor became Mike Vinci ("Vinci"), district manager.

27.    In or around November 2021, due to Ms. Sewall's excellent performance, Vinci recommended Ms. Sewall to be promoted to the position of district manager.

28.    Ms. Sewall interviewed and was hired for this position.

29.    With this promotion, Ms. Sewall's supervisor became Trevor Payne ("Payne"), director of pharmacy and retail.

30.    As district manager, Ms. Sewall was assigned to oversee several store locations including, but not limited to, two Middletown, NY stores, two Monroe, NY stores, a Chester, NY store, and a Liberty, NY store.

31.    Ms. Sewall was provided access for an office in New Paltz, New York, which served as her primary worksite.

32.    Notably, Ms. Sewall received positive feedback about her performance from Payne.

33.    In or around April of 2022, Payne resigned from his position. As such, Ms. Sewall's supervisor became Aris Souladis ("Souladis"), director of pharmacy and retail.

34.    Souladis is a non-disabled male and is approximately 15 years younger than Ms. Sewall.

35.    In or around May 2022, Ms. Sewall was diagnosed with diabetes.

36.    Diabetes is a physical impairment that substantially limits one or more of Ms. Sewall's major life activities including, but not limited to, eating, sleeping, her ability to control her energy levels and blood sugar, her ability to fight disease, and her ability to run and exercise.

Further, diabetes is an impairment which substantially limits one or more of her major bodily functions, including her endocrine, cardiovascular, and immune systems. Accordingly, at all relevant times, Ms. Sewall was (and still is) disabled under federal law and New York State law.

37.     Ms. Sewall disclosed her diabetes disability diagnosis to Souladis and asked for the reasonable accommodation of taking occasional time off (approximately once a month) for medical appointments related to her disability.

38.     Based on his flippant attitude and facial expressions, Souladis seemed annoyed and uninterested in Ms. Sewall's disability disclosure.

39.     Souladis also did not commit to allowing Ms. Sewall to attend her disability-related appointments.

40.     Indeed, occasionally Ms. Sewall was not allowed to attend her appointments because of "mandatory" meetings.

41.     Notably, it was not an undue burden to allow Ms. Sewall to attend her appointments, even when they overlapped with so-called "mandatory" meetings.

42.     Additionally, these requests for time off to attend disability-related appointments constituted requests for intermittent leave under the FMLA.

43.     Every week there were meetings between Souladis and all the district managers, including: Mahandra Ramjit ("Ramjit"), Anthony Kollar ("Kollar"), Elizabeth Nazzal ("Nazzal"), Narendra Patel ("Patel") and Ms. Sewall.

44.     Ramjit is a non-disabled male and is approximately 20 years younger than Ms. Sewall.

45.     Kollar is a non-disabled male and is approximately 20 years younger than Ms. Sewall.

46.     Nazzal is a non-disabled female and is approximately 30 years younger than Ms. Sewall.

47.     Patel is a non-disabled male and is approximately 20 years younger than Ms. Sewall.

48.     Ms. Sewall began to notice that during these weekly meetings, Souladis ignored her thoughts and suggestions.

49.     For example, in or around August 2022, Ms. Sewall made a suggestion during one of the weekly meetings. Souladis disregarded her suggestion and did not provide feedback. At the end of the meeting, Patel made the exact same suggestion, and Souladis praised Patel for his idea.

50.     It was clear Souladis was treating Ms. Sewall in a clearly disparate fashion compared to the younger, non-disabled, male district managers.

51.     Indeed, Souladis routinely called Ms. Sewall "stupid" and overall treated her in a rude and dismissive manner that was different from how he treated other younger and male employees.

52.     Souldadis also frequently made comments about Mr. Sewall's age, strangely asking whether she wanted to keep working for Defendants given that she had "grandkids" at home (implying she was too old to be working).

53.     Souladis did not treat the male, younger, and non-disabled employees in this rude and dismissive manner.

54.     In or around September of 2022, Ms. Sewall contacted Kollar and raised protected concerns that Souladis was discriminating against her based on her age, gender, disability, and the fact that she had requested disability-related accommodations.

55.     In or around October of 2022, Ms. Sewall received a performance review from Souladis that was based on feedback he had received from Payne. Souladis admitted that Ms. Sewall's performance numbers were good and that Payne had given positive feedback about her performance.

56.     However, it was clear that although Ms. Sewall's performance was being praised, she was not being treated the same as her younger, non-disabled, male colleagues. Additionally, Ms. Sewall was not being spoken to about the same leadership opportunities as her younger, non-disabled colleagues.

57.     For example, there were stretch assignments offered to the younger, non-disabled district managers. Stretch assignments were an opportunity to learn in-depth about the metrics, which could lead to becoming a regional subject matter expert. As such, this gave the younger, non-disabled district managers regional exposure and positioned them to further their careers in the Company.

58.     Ms. Sewall asked for these assignments, but was not given them.

59.     Indeed, Souladis repeated his comment about Ms. Sewall's grandkids, including his suggestions that she might want to retire given that she was a grandmother with grandkids, including saying it must be tough to keep working as she had grandkids at home.

60.     Throughout November and December 2022, Souladis consistently treated Ms. Sewall in a disparate fashion compared to the younger, non-disabled, male district managers.

61.     This included making comments about her being "stupid" and referencing her being too old to work (including in connection with references to her grandkids).

62.     Additionally, Souladis would continually ignore Ms. Sewall and disregard her thoughts during weekly meetings.

63.     Additionally, Souladis required Ms. Sewall to submit her schedule every week; however, the younger, non-disabled, male district managers were not required to do this and were thus given more flexibility and were subjected to less strenuous day to day oversight.

64.     In or around December 2022, Ms. Sewall approached Souladis and raised protected concerns that she was being treated in a disparate fashion based on her age and/or disability.

65.     Souladis seemed annoyed and bluntly told Ms. Sewall that she was not being treated disparately.

66.     In or around January of 2023, Ms. Sewall had a mid-year check in. Souladis suddenly told Ms. Sewall that she needed to put in extra work and be more organized.

67.     Further, Souladis stated that the district manager position may be "too hard" for Ms. Sewall and that she "may not be able to handle it" and strangely commented that, as a grandmother, wouldn't she rather spend time more time with her grandkids at home.

68.     Ms. Sewall was surprised by this, since Souladis had never previously represented that her performance was not reaching expectations and objective metrics showed that her district was performing as well as, or better than, other districts. Further, Ms. Sewall had received a positive performance review only 4 months prior.

69.     Additionally, the reference to Ms. Sewall being a grandmother and having grandkids was discriminatory, especially as she was not a primary caretaker for her grandkids and so it was clearly a reference to her age and/or her status as an older woman.

70.     It was clear that Souladis did not want Ms. Sewall working for the Company any longer based on a discriminatory and/or retaliatory animus towards her age, sex, disability, requesting/utilizing disability-related accommodations, and/or for raising protected concerns.

71.     Indeed, Souladis did not give similar feedback to the younger, non-disabled, and/or male district managers despite their districts performing worse and despite them being less organized and putting in less work.

72.     In or around April of 2023, Souladis approached Ms. Sewall and asked if her position was too difficult for her given her life circumstances. Further, Souladis said that he thought Ms. Sewall should step down from her position to be with her grandkids as the job may be too "strenuous," implying he did not think she should be working at this age, especially as an older grandmother with grandkids.

73.     Notably, Souladis did not tell Kollar, Ramjita, Nazzal, or Patel that the position might be too hard for them and/or suggest that they step down from their position.

74.     In response, Ms. Sewall raised protected concerns to Souladis that she felt he was treating her in a disparate manner compared to younger, non-disabled, male employees.

75.     Indeed, Ms. Sewall noted how her performance (including her objective numbers and performance criteria) were better than her colleagues, yet she was the only one receiving this seemingly biased feedback.

76.     Notably, Ms. Sewall's district was performing well and was consistently one of the top two performers out of the 6 other districts in that area, which Ms. Sewall noted.

77.     Souladis seemed very upset and responded in an aggressive manner that he was not discriminating against Ms. Sewall.

78.     Throughout April and May of 2023, Souladis continued to treat Ms. Sewall in a discriminatory and/or retaliatory manner. For instance, Souladis ignored Ms. Sewall's comments and ideas during weekly meetings. Further, Souladis scolded and berated Ms. Sewall.

79.    Souladis likewise continued his comments about Ms. Sewall's age, and how at this age she should really be home spending time with her grandkids rather than working.

80.    Notably, Ms. Sewall's district was rated second (out of 6) in the area in terms of its performance numbers and metrics.  Souladis treated the male, younger, and non-disabled leaders of the other lower performing districts more positively than he treated Souladis, despite the fact that her district was performing better.

81.    It was clear that Souladis was treating Ms. Sewall in a discriminatory and/or retaliatory fashion based on her age, gender, disability, requesting/utilizing disability-related accommodations, and/or because she had engaged in protected activity by raising protected concerns.

82.    Indeed, throughout her employment, Souladis would occasionally refer to Ms. Sewall in a harassing manner as "grandma," including by saying "hi grandma" in a harassing manner when he saw her.

83.    In or around the end of June 2023, Souladis informed Ms. Sewall that she was being put on a 60-day performance improvement plan.  Souladis also gave Ms. Sewall deadlines for the beginning of August 2023, on certain tasks.

84.    Another director of pharmacy and retail, Cecil Wong ("Wong"), was also present at the meeting.

85.    Wong is a non-disabled, female and is approximately 10 years younger than Ms. Sewall.

86.    This 60 day performance improvement plan was strange, as Defendants' policy is to first issue a 90 day performance improvement plan, which Ms. Sewall never received. Accordingly, from the beginning it was clear Defendants were attempting to paper the file for

Ms. Sewall's discriminatory/retaliatory termination by giving her less time than her younger, male, and/or non-disabled colleagues were given.

87.     Ms. Sewall immediately raised protected concerns to both Souladis and Wong that she was being discriminated and retaliated against because of her age, gender, disability, requesting/utilizing disability-related accommodations, and for raising protected concerns, since there was no valid reason for her (Ms. Sewall) to be placed on a performance improvement plan and certainly no reason to reduce the amount of time Ms. Sewall had to complete the plan. Ms. Sewall further stated that she felt the performance improvement plan was Souladis's way of creating a pretextual excuse to terminate her.

88.     Indeed, the plan itself wasn't issued until on or around June 18, 2023, but it purportedly ran from June 4, 2023 (before it was even issued) through August 4, 2023.  So, in addition to already being artificially short (60 instead of 90 days), an additional 14 days of the plan had already run by the time Ms. Sewall was shown the plan, hence giving her only approximately 45 days to complete a plan for which other employees were normally given 90 days.

89.     In or around the beginning of July 2023, Ms. Sewall contacted the regional director, Dave Cooper ("Cooper").  Ms. Sewall raised protected concerns to Cooper that she felt she was being discriminated and retaliated against based on her age, gender, disability, requesting/utilizing disability-related accommodations, and for engaging in protected activity by raising protected concerns.

90.     Further, Ms. Sewall pointed out to Cooper that there was seemingly no valid reason for her to be put on a performance improvement plan because she was excelling in all of her metrics.

91.     Indeed, Ms. Sewall pointed out how many of her younger non-disabled male colleagues were objectively performing significantly worse but were not subjected to a performance improvement plan.  She further mentioned that the plan was artificially short, and accordingly appeared to be designed intentionally to ensure she would fail.

92.     Cooper is a non-disabled male and is approximately 20 years younger than Ms. Sewall.

93.     In response, Cooper told Ms. Sewall that he would be relaying her concerns to employee relations (the Company's HR team).

94.     On or around June 19, 2023, Ms. Sewall was experiencing flu-like symptoms.

95.     Notably, Ms. Sewall's diabetes undermines her immune system and thus increases her risk of both becoming ill with flu viruses and of developing serious flu complications including, but not limited to, bronchitis, sinus infections, pneumonia, and even death.

96.     Ms. Sewall disclosed her symptoms, along with her increased risk due to her diabetes, to Souladis and requested a week of leave using her already accrued sick time.

97.     Notably, Ms. Sewall was already scheduled for (and approved for) vacation time from on or around June 24, 2023 through July 2, 2023.

98.     This request constituted a request for a disability-related reasonable accommodation.

99.     Additionally, at all relevant times, the Company employed 50 or more employees within a 75-mile radius of the worksite where Ms. Sewall worked.

100.    Furthermore, at all relevant times, Ms. Sewall had been an employee for at least 12 months and had worked in excess of 1250 hours during the preceding 12-month period. As such, Ms. Sewall was an eligible employee for FMLA leave.

101.   Ms. Sewall's flu-like symptoms, as exacerbated by her diabetes disability, was a serious medical condition that caused periods of incapacity, required continuing treatment, and served as a legitimate basis for protected leave for FMLA.

102.   As such, Ms. Sewall was an eligible employee entitled to leave protected under the FMLA.

103.   Indeed, Ms. Sewall's disability-related accommodation request was also a request for leave protected under the FMLA.

104.   Souladis purportedly granted Ms. Sewall's request.

105.   On or around June 19, 2023, Ms. Sewall took a week-long sick leave followed by a week-long pre-scheduled leave (vacation) and continued to recover from her illness. Ms. Sewall returned to work on or around July 3, 2023.

106.   When she returned, Souladis suddenly made clear that the PIP period was still ending on August 4, 2023, despite her missing 2 weeks due to her disability leave and vacation.

107.   Ms. Sewall raised protected concerns that she had just been out on leave related to her diabetes-exacerbated illness. She also asked that her PIP be extended to at least make up for the time she was out. This constituted a request for a disability-related accommodation, as well as a concern that she was being punished for taking protected leave. Ms. Sewall was told that the PIP would not be extended (which constituted a denial of the requested disability accommodation).

108.   A few days later, Ms. Sewall spoke with Tom Lesny ("Lesney") from employee relations (HR).

109.   Ms. Sewall expressed to Lesney protected concerns that she was being targeted in a discriminatory and/or retaliatory manner based on her age, gender, disability,

requesting/utilizing disability-related accommodations, and for engaging in protected activity by raising protected concerns.

110.    Lesney claimed that he would investigate Ms. Sewall's claims.

111.    Upon information and belief, Lesney is a non-disabled male.

112.    On or around August 10, 2023, Souladis suddenly informed Ms. Sewall that she was being terminated, allegedly as a result of poor performance.

113.    Indeed, part of this alleged poor performance was based on the tasks Ms. Sewall was unable to complete by the official end date of the PIP as a result of her disability-related protected leave (and the artificially short period of the PIP).

114.    As such, it was clear that the Company was engaging in a retroactive denial of Ms. Sewall's disability-related accommodation request.

115.    Accordingly, on or around August 10, 2023, Ms. Sewall was involuntarily terminated from the Company.

116.    Notably, Ms. Sewall was not performing poorly, and her district was excelling in its metrics.

117.    Indeed, throughout Ms. Sewall's 16-year employment with the Company she received several promotions and had received positive feedback on her performance reviews, until the January 2023 check in.

118.    Upon information and belief, Ms. Sewall was replaced by a much younger non-disabled male in his 40's.

119.    On or around February 2024, Ms. Sewall timely filed a Charge of Discrimination (the "Charge") with the New York State Division of Human Rights ("NYSDHR") and the United States Equal Employment Opportunity Commission ("EEOC").

120.    On or around May 28, 2024, Ms. Sewall requested an administrative convenience dismissal from the NYSDHR so that she could pursue her claims in court.

121.    On or around May 29, 2024, the NYSDHR issued an administrative convenience dismissal.

122.    Ms. Sewall notified the EEOC of her intent to file a complaint in court and, accordingly, requested that the EEOC provide a right to sue letter and permit Ms. Sewall to file in court.

123.    The EEOC issued a Right to Sue notice on or around August 1, 2024.

124.    This Complaint is timely filed in compliance with the timeframes of relevant laws and requirements.

## COUNT I

**(Disability Discrimination and Failure to Accommodate in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. All Defendants (Walgreen Co. and Walgreens Boots Alliance, Inc.)**

125.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

126.    During all relevant times, the Company was an employer under the Americans with Disabilities Act, 42 U.S.C. §§12101, et. seq. ("ADA"), because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

127.    At all relevant times, Ms. Sewall was a qualified employee and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

128.    Ms. Sewall suffers (and at all relevant times suffered) from diabetes.  Diabetes is an impairment that substantially limits one or more of her major life activities, including, but not limited to, eating, sleeping, her ability to fight disease, and her ability to run and engage in physical activity, including exercising. Further, diabetes is an impairment which substantially limits one or more of her major bodily functions, including her endocrine, cardiovascular, circulatory, digestive, and immune systems.  Accordingly, Ms. Sewall is (and at all relevant times was) disabled under the ADA.

129.    Ms. Sewall disclosed her disability to the Defendants and/or the Defendants were aware of Ms. Sewall's disability, and/or the Defendants regarded Ms. Sewall as disabled.

130.    Ms. Sewall requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested reasonable accommodations included, but were not limited to, time off for appointments and a medical leave, along with extra time to complete the PIP as a result of this disability-related leave.

131.    The disability-related accommodations requested by Ms. Sewall did not pose an undue burden on the Defendants.

132.    Defendants failed to engage in an interactive dialogue related to one or more of these disability-related accommodation requests.

133.    Defendants unlawfully denied one or more of Ms. Sewall's disability-related accommodation requests, including, her medical leave, her request for more time to complete the PIP in light of the disability-related leave, by expecting her to complete work while on leave and punishing her for not doing so (which constituted a retro-active denial of her leave, and time off for appointments).

134.    The Company discriminated against Ms. Sewall due to her disability by subjecting Ms. Sewall to adverse actions, including, but not limited to, subjecting Ms. Sewall to a harassing and otherwise hostile work environment, treating Ms. Sewall differently than her colleagues, holding Ms. Sewall to higher standards than her colleagues, ignoring her ideas in meetings, not giving her assignments that would allow for career growth, unfairly putting Ms. Sewall on a PIP that was artificially short and designed to make her fail, and/or terminating Ms. Sewall's employment.

135.    Non-disabled employees of the Company were treated more favorably than Ms. Sewall including through being given assignments for career growth, not being improperly harassed, not being subjected to a hostile work environment, and/or not being terminated.

136.    Upon information and belief, the Company replaced Ms. Sewall with a lesser or similarly qualified, non-disabled employee, who the Company likewise did not regard as disabled.

137.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Sewall.

138.    As a direct and proximate result of the Company's violation of the ADA, Ms. Sewall has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

139.    Ms. Sewall seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

## COUNT II

**(Disability Discrimination and Failure to Accommodate in Violation of the New York State Human Rights Law, Executive Law Article 15, Section 296)**

**Plaintiff v. All Defendants (Walgreen Co. and Walgreens Boots Alliance, Inc.)**

140.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

141.    At all relevant times, the Company employed one or more persons.

142.    The Company is an employer under the definition of New York Executive Law Article 15 ("NYSHRL").

143.    Ms. Sewall suffers (and at all relevant times suffered) from diabetes.  Diabetes is an impairment that substantially limits one or more of her major life activities, including, but not limited to, eating, sleeping, her ability to fight disease, and exercising. Further, diabetes is an impairment which substantially limits one or more of her major bodily functions, including her endocrine and immune system. Accordingly, Ms. Sewall is (and at all relevant times was) disabled under the New York State Human Rights Law.

144.    At all relevant times, Ms. Sewall was a qualified employee and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

145.    Ms. Sewall disclosed her disability to the Defendants and/or the Defendants were aware of Ms. Sewall's disability, and/or the Defendants regarded Ms. Sewall as disabled.

146.    Ms. Sewall requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job.

These requested reasonable accommodations included, but were not limited to, time off for appointments and a medical leave, along with extra time to complete the PIP as a result of this disability-related leave.

147.    The disability-related accommodations requested by Ms. Sewall did not pose an undue burden on the Defendants.

148.    Defendants failed to engage in an interactive dialogue related to one or more of these disability-related accommodation requests.

149.    Defendants unlawfully denied one or more of Ms. Sewall's disability-related accommodation requests, including, her medical leave, her request for more time to complete the PIP in light of the disability-related leave, by expecting her to complete work while on leave and punishing her for not doing so (which constituted a retro-active denial of her leave, and time off for appointments).

150.    The Company discriminated against Ms. Sewall due to her disability by subjecting Ms. Sewall to adverse actions, including, but not limited to, subjecting Ms. Sewall to a harassing and otherwise hostile work environment, treating Ms. Sewall differently than her colleagues, holding Ms. Sewall to higher standards than her colleagues, ignoring her ideas in meetings, not giving her assignments that would allow for career growth, unfairly putting Ms. Sewall on a PIP that was artificially short and designed to make her fail, and/or terminating Ms. Sewall's employment.

151.    Non-disabled employees of the Company were treated more favorably than Ms. Sewall including through being given assignments for career growth, not being improperly harassed, not being subjected to a hostile work environment, and/or not being terminated.

152.    Upon information and belief, the Company replaced Ms. Sewall with a lesser or similarly qualified, non-disabled employee, who the Company did not regard as disabled.

153.    The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Sewall and/or conduct so reckless to amount to such disregard.

154.    As a direct and proximate result of the Defendants' violations of the NYSHRL, Ms. Sewall has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

155.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), emotional distress damages, punitive damages, injury to reputation, interest, attorneys' fees, and costs.

## COUNT III

**(Interference with, and Retaliation for Exercising, Rights Under the Family and Medical Leave Act – 29 U.S.C. § 2615)**

**Plaintiff v. All Defendants (Walgreen Co. and Walgreens Boots Alliance, Inc.)**

156.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

157.    The Company (including each of the Walgreen Co. and Walgreens Boots Alliance, Inc.) is (and all relevant times was) engaged in an industry affecting commerce.

158.    At all relevant times, the Company (including each of the Walgreen Co. and Walgreens Boots Alliance, Inc.) employed 50 or more employees for 20 or more calendar weeks in the current and/or proceeding calendar years.

159.    As such, the Company (including each of the Walgreen Co. and Walgreens Boots Alliance, Inc.) is (and at all relevant times was) an employer under the FMLA.

160.    In addition, the Company (including each of the Walgreen Co. and Walgreens Boots Alliance, Inc.) employed 50 or more employees within 75 miles of the worksite at which Ms. Sewall worked.

161.    Ms. Sewall was an eligible employee under the FMLA because she had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

162.    Ms. Sewall suffered from one or more serious health conditions, including diabetes and flu-like symptoms which required inpatient care and/or continuing care from a medical provider.

163.    Ms. Sewal requested FMLA leave including in the form of both intermittent and continuous FMLA leave, related to the need to take time off for her own serious health conditions.

164.    The Defendants interfered with, restrained, and/or denied the exercise of, or the attempted exercise of, Ms. Sewall's rights under the FMLA.  For example, the Defendants, including through their agents, denied Ms. Sewall time off to attend all her medical appointments, expected and required Ms. Sewall to work during her FMLA leave, and punished her (including through ultimately terminating her) for not working during her FMLA leave.

165.    Additionally, Ms. Sewall's leave was used as a negative factor in Defendants' decision to terminate her.

166.    In doing so, the Defendants unlawfully denied and otherwise interfered with Ms. Sewall's ability to utilize leave under the FMLA.

167.    Defendants, including by and through its agents, retaliated and/or discriminated against Ms. Sewall for requesting and/or utilizing FMLA leave by subjecting Ms. Sewall to adverse actions, including, but not limited to, subjecting Ms. Sewall to a harassing and otherwise hostile work environment, treating Ms. Sewall differently than her colleagues, holding Ms. Sewall to higher standards than her colleagues, ignoring her ideas in meetings, not giving her assignments that would allow for career growth, unfairly putting Ms. Sewall on a PIP that was artificially short and designed to make her fail, and/or terminating Ms. Sewall's employment.

168.    Defendants' actions were willful and in bad faith.

169.    As a direct and proximate result of the Defendants' violation of the FMLA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

170.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorney's fees, and costs.

## COUNT IV

**(Sex Discrimination in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (Walgreen Co. and Walgreens Boots Alliance, Inc.)**

171.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

172.    The Company (including each of Walgreen Co. and Walgreens Boots Alliance, Inc. both collectively and individually) is (and at all relevant times was) an employer as defined by state anti-discrimination laws, including the NYSHRL.

173.    Defendants, by and through their agents, discriminated against Ms. Sewall with respect to the terms, conditions, and/or privileges of her employment, because of Ms. Sewall's sex (female) and/or because she is an older female employee with a disability, as well as being an older female grandmother ("sex plus" discrimination).

174.    More specifically, the Defendants subjected Ms. Sewall to adverse actions, including, but not limited to, subjecting Ms. Sewall to a harassing and otherwise hostile work environment, treating Ms. Sewall differently than her colleagues, holding Ms. Sewall to higher standards than her colleagues, ignoring her ideas in meetings, not giving her assignments that would allow for career growth, unfairly putting Ms. Sewall on a PIP that was artificially short and designed to make her fail, and/or terminating Ms. Sewall's employment because she was a woman.

175.    Upon information and belief, the Defendants replaced Ms. Sewall with a lesser or similarly qualified, male employee.

176.    Defendants have engaged in discrimination, harassment, and other illegal conduct with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

177.    As a direct and proximate result of the Defendants' violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

178.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT V

### (Sex Discrimination in Violation of Title VII,
### 42 U.S.C. §§2000e, et. seq.)

### Plaintiff v. All Defendants (Walgreen Co. and Walgreens Boots Alliance, Inc.)

179.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

180.    During all relevant times, the Company (including each of Walgreen Co. and Walgreens Boots Alliance, Inc. both collectively and individually) was an employer under Title VII, 42 U.S.C. §§2000e, et. seq. (hereinafter "Title VII") because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

181.    Defendants, by and through its agents, discriminated against Ms. Sewall with respect to the terms, conditions, and/or privileges of her employment, because of Ms. Sewall's sex (female) and/or because she was an older female employee and/or a disabled female employee ("sex plus" discrimination).

182.    More specifically, the Defendants subjected Ms. Sewall to adverse actions, including, but not limited to, subjecting Ms. Sewall to a harassing and otherwise hostile work environment, treating Ms. Sewall differently than her colleagues, holding Ms. Sewall to higher standards than her colleagues, ignoring her ideas in meetings, not giving her assignments that would allow for career growth, unfairly putting Ms. Sewall on a PIP that was artificially short and designed to make her fail, and/or terminating Ms. Sewall's employment because she was a woman.

183.    Upon information and belief, the Defendants replaced Ms. Sewall with a lesser or similarly qualified, male employee.

184.    As a direct and proximate result of the Company's violation of Title VII, Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

185.    The Company acted with malice and/or with reckless indifference to the federally protected rights of the Plaintiff.

186.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, diminished earning capacity, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish,

loss of enjoyment of life, and other nonpecuniary losses), punitive damages, interest, attorney's fees, and costs.

## COUNT VI

### (Age Discrimination in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.)

### Plaintiff v. All Defendants (Walgreen Co. and Walgreens Boots Alliance, Inc.)

187.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

188.    At all relevant times, Ms. Sewall was over 40 years old.

189.    During all relevant times, the Company was an employer under definition of the Age Discrimination in Employment Act, 29 U.S.C. §§621 et. seq. (hereinafter the "ADEA") because it employed more than 20 persons for 20 or more calendar weeks within the previous 12-month period.

190.    The Company, by and through its agents, harassed and discriminated against Ms. Sewall with respect to her compensation, terms, privileges, and/or conditions of employment because of Ms. Sewall's age (currently 62) and/or because she was an older, disabled employee ("age plus" discrimination).

191.    More specifically, the Company subjected Ms. Sewall to adverse actions because of her age, including, but not limited to, subjecting Ms. Sewall to a harassing and otherwise hostile work environment, treating Ms. Sewall differently than her colleagues, holding Ms. Sewall to higher standards than her colleagues, ignoring her ideas in meetings, not giving her assignments that would allow for career growth, unfairly putting Ms. Sewall on a PIP that was artificially short and designed to make her fail, and/or terminating Ms. Sewall's employment,

because of Ms. Sewall's age (currently 62) and/or because Ms. Sewall was an older, female, and disabled employee ("age plus" discrimination).

192.     The Company willfully violated the ADEA because the Company knew or should have known its conduct was prohibited by Federal law and/or the Company acted with malice and/or reckless indifference to the federally protected rights of the Plaintiff.

193.     As a direct and proximate result of the Defendants' violation of the ADEA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

194.     The Plaintiff seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, interest, attorney's fees, and costs.

## Count VII

**(Discrimination Based on Age in Violation of New York State Human Rights Law, Executive Law Article 15, Section 296**

**Plaintiff v. All Defendants (Walgreen Co. and Walgreens Boots Alliance, Inc.)**

195.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

196.     At all relevant times, Ms. Sewall was over 40 years old.

197.     At all relevant times, the Company employed one or more persons.

198.    During all relevant times, the Company was an employer under the definition of the NYSHRL.

199.    The Company, by and through its agents, harassed and discriminated against Ms. Sewall with respect to her compensation, terms, privileges, and/or conditions of employment because of Ms. Sewall's age (currently 62) and/or because she was an older female employee and/or disabled female employee ("age plus" discrimination).

200.    More specifically, the Company subjected Ms. Sewall to adverse actions because of her age, including, but not limited to, subjecting Ms. Sewall to a harassing and otherwise hostile work environment, treating Ms. Sewall differently than her colleagues, holding Ms. Sewall to higher standards than her colleagues, ignoring her ideas in meetings, not giving her assignments that would allow for career growth, unfairly putting Ms. Sewall on a PIP that was artificially short and designed to make her fail, and/or terminating Ms. Sewall's employment, because of Ms. Sewall's age (currently 62) and/or because Ms. Sewall was an older and disabled employee ("age plus" discrimination).

201.    Upon information and belief, Ms. Sewall was replaced by a less qualified younger individual.

202.    The Company's actions against the Plaintiff were wanton, willful, and malicious. The Company acted willfully and/or with reckless disregard for the state protected rights of Ms. Sewall.

203.    As a direct and proximate result of the Defendants' violations of the NYSHRL, Ms. Sewall has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary damages, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

204.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT VIII

### (Retaliation in Violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.*)

### Plaintiff v. All Defendants (Walgreen Co. and Walgreens Boots Alliance, Inc.)

205.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

206.    Ms. Sewall engaged in protected activity under Title VII, including, but not limited to, opposing, expressing protected concerns, and/or engaging in other protected activity regarding harassment and a hostile work environment based on sex; and opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Ms. Sewall's sex.

207.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Sewall's exercising of or enjoyment of one or more rights granted by Title VII.

208.    More specifically, the Company subjected Ms. Sewall to adverse actions, including, but not limited to, subjecting Ms. Sewall to a harassing and otherwise hostile work environment, treating Ms. Sewall differently than her colleagues, holding Ms. Sewall to higher standards than her colleagues, ignoring her ideas in meetings, not giving her assignments that

would allow for career growth, unfairly putting Ms. Sewall on a PIP that was artificially short and designed to make her fail, and/or terminating Ms. Sewall's employment in retaliation for raising protected concerns she was being discriminated against due to her sex.

209.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Sewall.

210.    As a direct and proximate result of the Company's violations of Title VII, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

211.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, diminished earning capacity, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, interest, attorney's fees, and costs.

**COUNT IX**

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**
**Plaintiff v. All Defendants (Walgreen Co. and Walgreens Boots Alliance, Inc.)**

212.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

213.    The Plaintiff engaged in activity protected under the ADA, including, but not limited to: (i) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Ms. Sewall's

disability; (ii) requesting and/or utilizing reasonable accommodations for disabilities which were intended to allow Ms. Sewall to perform the essential functions of her job; and/or (iii) opposing, voicing protected concerns, and/or engaging in other protected activity related to disability discrimination.

214.    The disability-related accommodation requests which the Company retaliated against Ms. Sewall for requesting included, but were not limited to, time off from work for medical appointments and a medical leave along with extra time to complete the PIP in light of the medical leave.

215.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Sewall's exercising of, or enjoyment of, one or more rights granted by the ADA.

216.    The Company retaliated against Ms. Sewall for engaging in protected activity by subjecting Ms. Sewall to adverse actions, including, but not limited to, subjecting Ms. Sewall to a harassing and otherwise hostile work environment, treating Ms. Sewall differently than her colleagues, holding Ms. Sewall to higher standards than her colleagues, ignoring her ideas in meetings, not giving her assignments that would allow for career growth, unfairly putting Ms. Sewall on a PIP that was artificially short and designed to make her fail, and/or terminating Ms. Sewall's employment.

217.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Sewall.  As a direct and proximate result of the Company's violation of the ADA, Ms. Sewall has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

218.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

## COUNT X

**(Retaliation in Violation of the Age Discrimination in Employment Act)**

**Plaintiff v. All Defendants (Walgreen Co. and Walgreens Boots Alliance, Inc.)**

219.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

220.    Ms. Sewall engaged in protected activity under the ADEA, including, but not limited to: (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on age and/or (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Defendants due to Ms. Sewall's age and/or because she was an older person with a disability.

221.    The Company retaliated against Ms. Sewall for opposing, voicing protected concerns, and/or engaging in other protected activity related to one or more practices made unlawful by the ADEA by subjecting Ms. Sewall to adverse actions, including, but not limited to, subjecting Ms. Sewall to a harassing and otherwise hostile work environment, treating Ms. Sewall differently than her colleagues, holding Ms. Sewall to higher standards than her colleagues, ignoring her ideas in meetings, not giving her assignments that would allow for

career growth, unfairly putting Ms. Sewall on a PIP that was artificially short and designed to make her fail, and/or terminating Ms. Sewall's employment.

222.    Defendants unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Sewall's exercising of, or enjoyment of, one or more rights granted by the ADEA.

223.    Defendants acted with malice and/or with reckless indifference to the federally protected rights of Ms. Sewall.

224.    As a direct and proximate result of Defendants' violations of the ADEA, Ms. Sewall has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

225.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), compensatory damages, diminished earning capacity, injury to reputation, other monetary damages, liquidated damages, attorneys' fees, interest, and costs.

## COUNT XI

### (Retaliation in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)

### Plaintiff v. All Defendants (Walgreen Co. and Walgreens Boots Alliance, Inc.)

226.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

227.    Ms. Sewal engaged in protected activity under the NYSHRL, including, but not limited to, (i) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Defendants based on her

age, sex, and/or disability; (ii) requesting and utilizing reasonable accommodations for her disability which were intended to allow Ms. Sewall to perform the essential functions of her job; and/or (iii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the failure of the Defendants to provide requested disability-related reasonable accommodations and the failure of the Defendants to engage in an interactive dialogue related to Mr. Sewall's disability and requested accommodations.

228.    The Company retaliated against Ms. Sewall for engaging in protected activity by subjecting Ms. Sewall to adverse actions, subjecting Ms. Sewall to a harassing and otherwise hostile work environment, treating Ms. Sewall differently than her colleagues, holding Ms. Sewall to higher standards than her colleagues, ignoring her ideas in meetings, not giving her assignments that would allow for career growth, unfairly putting Ms. Sewall on a PIP that was artificially short and designed to make her fail, and/or terminating Ms. Sewall's employment.

229.    The Defendants unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Sewall's exercising of or enjoyment of rights granted by the NYSHRL.

230.    The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Sewall and/or conduct so reckless to amount to such disregard.

231.    As a direct and proximate result of the Defendants' violation of the NYSHRL, Ms. Sewall has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

232.    Ms. Sewall seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced

earning capacity, other financial damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, interest, attorneys' fees, and costs.

## COUNT XII

### (Retaliation in Violation of New York Whistleblower Law, NY Labor Law § 740)

### Plaintiff v. All Defendants (Walgreen Co. and Walgreens Boots Alliance, Inc.)

233.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

234.    The Plaintiff engaged in protected activity under New York Labor Law Section 740, including because she disclosed to a supervisor activity that she reasonably believed violated a law, rule, or regulation. These violations included, but were not limited to, sex, age, and disability discrimination, violations of the FMLA, violations of New York leave laws, and illegal retaliation.

235.    The Defendant retaliated against Ms. Sewall by subjecting Ms. Sewall to adverse actions, including, but not limited to, subjecting Ms. Sewall to a harassing and otherwise hostile work environment, treating Ms. Sewall differently than her colleagues, holding Ms. Sewall to higher standards than her colleagues, ignoring her ideas in meetings, not giving her assignments that would allow for career growth, unfairly putting Ms. Sewall on a PIP that was artificially short and designed to make her fail, and/or terminating Ms. Sewall's employment.

236.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

## COUNT XIII

### (Retaliation in violation of N.Y. Lab. Law § 215)

### Plaintiff v. All Defendants (Walgreen Co. and Walgreens Boots Alliance, Inc.)

237.    The Plaintiff incorporates all paragraphs above as if set forth fully herein.

238.    The Plaintiff suffered from one or more serious health conditions which qualified for leave protected under federal, local, and/or state law.

239.    The Plaintiff notified the Defendants that she needed to take a legally protected absence pursuant to federal, local and/or state law.

240.    Plaintiff had the right to take a leave was protected under New York law, including, but not limited to, the New York sick leave law and the FMLA.

241.    The Plaintiff took one or more legally protected absences which were protected pursuant to federal, state, and/or local law.

242.    The Defendants retaliated and/or discriminated against the Plaintiff for her legally protected absence pursuant to federal, local, and/or state law by subjecting Ms. Sewall to adverse actions, including, but not limited to, subjecting Ms. Sewall to a harassing and otherwise hostile work environment, treating Ms. Sewall differently than her colleagues, holding Ms. Sewall to higher standards than her colleagues, ignoring her ideas in meetings, not giving her assignments that would allow for career growth, unfairly putting Ms. Sewall on a PIP that was artificially short and designed to make her fail, and/or terminating Ms. Sewall's employment.

243.    As a direct and proximate result of the Defendants' violation of N.Y. Lab. Law § 215, the Plaintiff has suffered and continues to suffer damages, including, but not limited to,

reinstatement, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

244.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, reinstatement, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorneys' fees and costs.

WHEREFORE, the Plaintiff, Ann Sewall respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff her lost compensation and benefits (including, but not limited to, back pay and front pay),

D.  Award the Plaintiff other monetary damages, including damages for her diminished earning capacity and injury to reputation;

E.  Award the Plaintiff emotional distress damages;

F.  Award the Plaintiff compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses);

G.  Award the Plaintiff liquidated damages;

H.  Award the Plaintiff punitive damages;

I.  Award the Plaintiff her reasonable attorneys' fees;

J.  Award the Plaintiff interest and costs;

K.  Reinstate Plaintiff to her position at her old pay rate and seniority;

L.  Award the Plaintiff all other damages to which she is entitled; and

M.  Grant such further relief as is just and equitable.

Respectfully Submitted,

Ann Sewall

By his attorneys,

THE LAW OFFICES OF WYATT &
ASSOCIATES P.L.L.C

Date:   September 19, 2024          By:    _/s/ Timothy Brock_

Timothy Brock
tbrock@wyattlegalservices.com
NY State Bar: 5614151
NDNY No.: 700967

Benjamin J. Wyatt
BWyatt@Wyattlegalservices.com
NY State Bar: 5604590
NDNY No.: 700752

The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1112
Facsimile: (603) 685-2868

New York Office:
The Law Offices of Wyatt & Associates,
P.L.L.C.
69 State Street, 13th Floor, Suite 1320
Albany, NY 12207